UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Javier & Clorinda Vasquez,<br><br>        Plaintiffs,<br>v.<br><br>ESIS, Inc.<br><br>        Defendant. | Civil Action: _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This Complaint arises out of a head-on motor vehicle collision caused by Daniel Villicana (the "tortfeasor"). The collision occurred in Tilton, New Hampshire on May 31, 2018 and caused Mr. Javier Vasquez to sustain devastating injuries for which he spent more than three weeks at Dartmouth-Hitchcock Medical Center. The insurance carrier providing coverage for the tortfeasor offered to pay its $100,000.00 policy limit to the Plaintiffs on October 1, 2018. The rental vehicle that Mr. Vasquez was operating is presently understood to have at least $1,000,000.00 in underinsured motorist coverage. ESIS, Inc. ("ESIS") is the third-party administrator for an underinsured motorist policy. ESIS, through its acts and omissions in the State of New Hampshire and its failures and delays in administering Plaintiffs' underinsured motorist claims, has prevented Plaintiffs from recovering a single penny of bodily injury coverage arising out of the subject collision.

## PARTIES

1.      Javier Vasquez ("Mr. Vasquez") is an individual who resides at 6410 Isla Verde Ave., Apt. 7-1, Cond. Los Pinos in the municipality of Carolina, Puerto Rico 00979.

2.      Clorinda Vasquez ("Mrs. Vasquez") is an individual who resides at 6410 Isla

1

Verde Ave., Apt. 7-1, Cond. Los Pinos in the municipality of Carolina, Puerto Rico.

3. Defendant ESIS, Inc. ("ESIS") is a Pennsylvania Corporation duly registered in New Hampshire as a Foreign Profit Corporation, with a principal place of business located at 510 Walnut Street, Philadelphia, Pennsylvania 19106 and a Registered Agent listed as CT Corporation System, 2-1/2 Beacon Street, Concord, NH 03301.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and is between citizens of different States. *See* 28 U.S.C. § 1332(e) ("The word "States", as used in this section, includes . . . the Commonwealth of Puerto Rico.").

5. This Court has personal jurisdiction over ESIS because, amongst other reasons and as set forth in greater detail below, ESIS does business in New Hampshire; the claims in this complaint arise out of ESIS' contacts within New Hampshire; ESIS, through its acts and omissions, purposefully availed itself of the law of New Hampshire; and it is reasonable and fair to exercise jurisdiction over ESIS in New Hampshire.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLISION AND INJURY FACTS

7. On May 31, 2018 at approximately 8:07 p.m., Mr. Vasquez was driving eastbound along Laconia Road in Tilton, New Hampshire.

8. At the same time, Daniel Villicana ("the tortfeasor") was driving westbound along Laconia Road in Tilton, New Hampshire and approaching Mr. Vasquez's vehicle from the opposite direction.

9. As the tortfeasor approached a crest in the road he began to cross the road's center double-yellow line and entered the oncoming eastbound lane.

10. As a direct, proximate and foreseeable result of the tortfeasor's failure to stay in his lane, the tortfeasor violently collided head-on with the vehicle Mr. Vasquez was driving.

11. At the time of the collision and as a contributing factor to it, the tortfeasor was operating his vehicle while under the influence of drugs and/or alcohol.

12. As a direct, proximate and reasonably foreseeable result of the tortfeasor's conduct, Mr. Vasquez sustained devastating injuries including but not limited to a left femur fracture, a right open tib/fib fracture; a right ankle fracture, fracture of his left transverse processes at seven different levels, a rib fracture, a pleural effusion, an aortic hematoma and contusions in his abdominal wall.

13. As a direct, proximate and reasonably foreseeable result of the tortfeasor's conduct, Mr. Vasquez spent three months in various hospitals, underwent multiple surgeries and has engaged and continues to engage in extensive physical therapy to try to regain the use of his legs.  As a further direct, proximate and foreseeable result of the tortfeasor's conduct, Mr. Vasquez continues to experience limited mobility in his left knee and right ankle and, given the extent of his injuries, Mr. Vasquez's treating medical providers believe he will permanently suffer significant partial mobility loss in his lower extremities.

14. As a direct, proximate and reasonably foreseeable result of the tortfeasor's conduct, Mr. Vasquez has incurred and will continue to incur medical expenses; has incurred and will continue to incur economic loss including lost wages and lost future earning capacity; has suffered and will continue to suffer severe pain, injury and loss of enjoyment of life; has suffered and will continue to suffer from diminished functional capacity; has suffered and will continue to

suffer severe mental and emotional pain; and has suffered and will continue to suffer hedonic damages.

15. At all relevant times, Mrs. Vasquez was the lawful wife of Mr. Vasquez.

16. As a further direct, proximate and foreseeable result of the tortfeasor's conduct, Mrs. Vasquez has suffered and will continue to suffer the loss of the services, society and companionship of Mr. Vasquez which she enjoyed prior to the collision that is the subject of this claim.

17. The tortfeasor is liable to Mr. and Mrs. Vasquez for enhanced compensatory damages based on, among other things, his choice to operate a motor vehicle while under the influence of drugs and/or alcohol.

18. Mr. Vasquez's medical bills to date far exceed $600,000.00 and are continuing to accrue.

## INSURANCE FACTS

19. At the time of the collision, the tortfeasor was operating a vehicle insured by an Allstate Insurance policy with a $100,000.00 limit (the "tortfeasor's Allstate policy").

20. At the time of the collision, Mr. Vasquez was operating a vehicle which he had rented from The Hertz Corporation ("Hertz") and which he had rented in the course of his employment as a sales representative calling on clients in the New England area.

21. Within his rental contract with Hertz, Mr. Vasquez elected to purchase a "Liability Insurance Supplement" or "LIS policy."

22. The LIS policy covered Mr. Vasquez at the time of the collision at issue in this case.

23. The LIS policy included at least $1,000,000.00 in underinsured motorist coverage.

24. Mr. Vasquez's rental contract with Hertz identified the LIS policy and the underinsured motorist coverage it included but did not identify the name of the insurance company providing the coverage (if any).

25. Upon information and belief, Hertz itself underwrites the LIS policy coverage.

26. Upon information and belief, the issuer or underwriter of the LIS policy is ACE American Insurance Company ("ACE").

27. The value of Mr. and Mrs. Vasquez's claims far exceed the insurance coverage available to them from either policy.

**MR. AND MRS. VASQUEZ'S ATTEMPTS TO ACCESS THEIR COVERAGE**

28. No later than June 21, 2018 and just a few weeks after the collision, Mr. Vasquez's employer contacted Hertz on his behalf and requested "detailed information of the policy that covers Javier Vasquez, so we can provide it to his family…".

29. A Hertz representative advised that the proper point of contact for the policy was ESIS and provided a claim number to reference (Claim Number 1M01M010177463).

30. ESIS is responsible for handling and administering claims under the LIS policy, on behalf of either Hertz and/or ACE.

31. Upon information and belief, ESIS is under contract with Hertz and/or Ace to handle and administer claims under the LIS policy.

32. As early as June 26, 2018, the tortfeasor's Allstate policy had already accepted liability for the collision.

33. On July 11, 2018, Mr. and Mrs. Vasquez, through undersigned counsel, communicated with ESIS via telephone from New Hampshire and obtained contact information for the adjuster handling the claim, William Nesbit ("Mr. Nesbit").

34. Upon information and belief, for the benefit of his employer, Mr. Nesbit is registered with the State of New Hampshire Insurance Department as third-party adjuster.

35. On the same day, undersigned counsel sent a letter to ESIS and, pointing out the devastating injuries Mr. Vasquez sustained in the collision, requested the applicable policy limits.

36. On July 18, 2018, undersigned counsel provided medical bills and records to ESIS.

37. On October 1, 2018, the tortfeasor's Allstate policy offered its policy limit of $100,000.00 to Mr. and Mrs. Vasquez.

38. As of October 2018, Dartmouth-Hitchcock Medical Center billed Mr. Vasquez personally for more than $450,000.00.

39. As of February 2019, Mr. Vasquez had been placed in collections for a portion of his medical bills.

40. As of March 2019, Mr. Vasquez had incurred more than $600,000.00 in medical expenses and was being pursued by two collection agencies.

41. As of March 20, 2019, no communication from ESIS at all had been received in response to the requests from the office of undersigned counsel for information about the applicable policy.

42. On March 21, 2019, undersigned counsel contacted ESIS from New Hampshire again via both voicemail and e-mail requesting the available policy limits.

43. On the same day, ESIS, through Mr. Nesbit, responded via email and conveyed that "Mr. Vasquez was the driver of the Hertz Vehicle, it doesn't appear that any additional/coverages were purchased through Hertz for Mr. Vasquez for medicals."

44. On March 22, 2019, ESIS, through Mr. Nesbit, acknowledged that Mr. Vasquez had purchased the LIS policy and provided a copy of the car rental documents identifying the LIS policy and showing that Mr. Vasquez purchased the LIS policy.

45. The rental documents indicate that "LIS also includes uninsured/underinsured motorist coverage (while occupying the Car) for bodily injury and property damage, if applicable, for the difference between the statutory minimum underlying limits and $1,000,000 for each accident."

46. On April 19, 2019, undersigned counsel contacted ESIS and 1) gave notice that the tortfeasor's $100,000.00 Allstate policy provided completely inadequate coverage, 2) again requested the limits of the applicable underinsured policy along with a complete copy of the policy and 3) again asked for confirmation of the uninsured/underinsured limits available for Mr. Vasquez's claim.

47. On April 26, 2019, ESIS, through its claims representative Christopher LeFlore ("Mr. LeFlore"), contacted Plaintiffs' counsel, asked for "the status of injury treatment" for Mr. Vasquez and inquired as to whether "a coverage denial from the other party's insurance company" and been received.

48. Upon information and belief, for the benefit of his employer, Mr. LeFlore is registered with the State of New Hampshire Insurance Department as third-party adjuster.

49. On April 29, 2019, undersigned counsel sent a letter to ESIS and requested a number of things including the name of the insurer, the limits of the coverage, a copy of the policy and ESIS' position on liability.

50. On the same day ESIS, through Mr. LeFlore, 1) sent a letter of acknowledgement to undersigned counsel via e-mail, 2) requested that all correspondence on the claim be directed

to him, 3) advised that the "claim is still being investigated" and 4) nonsensically inquired again if undersigned counsel had "received the other party's insurance company denial letter?"

51. On April 30, 2019, ESIS, through Mr. LeFlore, advised that "In order for us to cover the claim under UMBI we would need a denial letter or something stated [sic] that the other party did not have insurance."

52. On May 3, 2019, ESIS, through Mr. LeFlore advised that "I called the other driver's insurance company and they have accepted fault and advised they made an offer on 4/16/19," and provided contact information for the tortfeasor's Allstate policy.

53. On May 9, 2019, undersigned counsel again requested a complete copy of the policy covering Mr. Vasquez.

54. On the same day, ESIS, through Mr. LeFlore advised that "The other company stated they accepted 100% liability. Their information is below. Thanks." He provided no response to the request for the policy and continued to misrepresent the applicable coverage.

55. On the same day, Plaintiffs' counsel again contacted Mr. LeFlore and conveyed: "As requested in the email below please provide a complete policy of the Liability Insurance Supplement policy that Mr. Vasquez purchased through [H]ertz. He is entitled to a copy of the coverage he purchased regardless of whether the tortfeasor's carrier accepts liability. The Hertz policy provides for uninsured/underinsured motorist benefits and we intend to make a claim pursuant to that coverage."

56. On the same day, ESIS, through Mr. LeFlore, finally acknowledged that "Your client does have Uninsured/Underinsured Motorist Coverage in the event that the other party does not have coverage or is underinsured," however he advised of ESIS' disingenuous position that "At this time it appears that coverage is clear with the claimant's insurance carrier."

57.     Mr. LeFlore also attached an explanation of the LIS policy which indicated, in part, that "LIS provides up to $1,000,000.00 of Uninsured/Underinsures protection for bodily injury sustained while driving the rental vehicle."

58.     On May 13, 2019 undersigned counsel sent a letter to ESIS reiterating the tortfeasor's Allstate policy limits offer of $100,000.00, provided additional medical records and bills, and again requested a confirmation that there was no coverage beyond the $1,000,000.00 already disclosed.

59.     On June 18, 2019 Plaintiffs' counsel sent a final letter to ESIS which 1) reiterated that on May 13th a copy of Mr. Vasquez medical records and billing statements was sent to ESIS along with a copy of Allstate's $100,000.00 offer, 2) advised of Plaintiffs' position that their claims exceed the value of the $1,000,00.00 limit of the LIS policy, 3) requested permission to accept the $100,000.00 offer from the tortfeasor's policy and 4) requested ESIS' position on offering the $1,000,000.00 LIS limit to the Plaintiffs, 5) requested confirmation that no other UIM/Excess policies were applicable to this loss.

60.     No further correspondence from ESIS has been received.

61.     Upon information and belief, Plaintiffs must exhaust the tortfeasor's Allstate policy before they can access the LIS policy.

62.     Upon information and belief, Plaintiffs must obtain permission from the LIS policy to accept any offer from the tortfeasor's Allstate policy in order to preserve their ability to access the LIS policy's underinsured motorist coverage.

63.     Because, as set forth above, ESIS has continuously failed to provide, convey or confirm accurate information about the LIS policy, failed to communicate in good faith with respect to the Plaintiffs' claims and failed and refused to provide a response to the Plaintiffs'

request for permission to accept the $100,000.00 settlement offer from the tortfeasor's policy, ESIS, has:

    a. unilaterally prevented Mr. and Mrs. Vasquez from obtaining permission from the LIS policy to accept a policy limits settlement offer from the tortfeasor's Allstate policy;

    b. for all intents and purposes, prevented Mr. and Mrs. Vasquez from exhausting the coverage available to them from the tortfeasor's Allstate policy;

    c. for all intents and purposes, prevented Mr. and Mrs. Vasquez from obtaining recovery from the tortfeasor's Allstate policy to which they are entitled and which has been the subject of a $100,000.00 outstanding offer to them for more than a year; and

    d. unilaterally prevented Mr. and Mrs. Vasquez from obtaining recovery from LIS policy to which they are entitled.

64. By and through the acts and omissions set forth above, ESIS has directly, proximately, foreseeably and in deliberate bad faith prevented Mr. and Mrs. Vasquez from recovering any liability insurance coverage at all in this collision, and caused them substantial damages including but not limited to financial harm and emotional harm in the form of frustration, anxiety and distress.

**COUNT I: TORTIOUS INTERFERENCE WITH CONTRACTUAL NEGOTIATIONS**

Both Plaintiffs Against ESIS, Inc.

65. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

66. Plaintiffs had an economic relationship with Allstate Insurance Company because, as set forth above, the policy was liable to the Plaintiffs for the damage caused by the tortfeasor

and the Allstate Insurance Company is attempting to negotiate with the Plaintiffs regarding said liability and settle their claims.

67. As set forth above, ESIS knew about this relationship.

68. As set forth above, ESIS intentionally and improperly interfered with this relationship.

69. As set forth above, the Plaintiffs were damaged by the interference.

### COUNT II: TORTIOUS INTERFERENCE WITH CONTRACTUAL NEGOTIATIONS

Both Plaintiffs Against ESIS, Inc.

70. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

71. The Plaintiffs had an economic relationship with the entity that issued the LIS policy to Mr. Vasquez (either Hertz or ACE) because, as set forth above, the policy was liable to the Plaintiffs for the damage caused by the tortfeasor.

72. As set forth above, ESIS knew about this relationship.

73. As set forth above, ESIS intentionally and improperly interfered with this relationship.

74. As set forth above, the Plaintiffs were damaged by the interference.

### THIRD COUNT: BREACH OF CONTRACT

Both Plaintiffs Against ESIS, Inc.

75. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

76. Upon information and belief, ESIS is party to a contract with either Hertz and/or ACE for the purpose of administering claims pursuant to the LIS Policy.

77. Upon information and belief, that contract calls for ESIS to perform by administering claims under the LIS policy, which is an obligation that the issuer of the LIS

policy (either Hertz or ACE) owes to the Plaintiffs.

78. Mr. Vasquez is an intended third-party beneficiary to that contract because, amongst other reasons, the entire purpose the contract is administering claimants' claims like that of Mr. Vasquez which are necessarily for claimants' benefit.

79. As set forth above, ESIS has failed to perform its obligations under that contract which has directly harmed the Plaintiffs.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court:

A. Enter judgment in their favor on all claims against ESIS, Inc;

B. Award them all the damages to which they are entitled including but not limited to enhanced compensatory damages; and

C. Grant such further relief as it deems equitable and just.

Respectfully Submitted,

Dated: October 29, 2019

/s/ D. Michael Noonan
D. Michael Noonan, Esq. #8214
mnoonan@shaheengordon.com
Attorney for the Plaintiffs
SHAHEEN & GORDON, P.A.
353 Central Avenue, 2nd Floor
Dover, NH  03821-0977
(603) 749-5000